UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER SHAND,<br>    Plaintiff, | : <br> : <br> : | PRISONER CASE NO.<br>3:18-cv-10 (JCH) |
| v. | : <br> : | |
| SCOTT SEMPLE, et al.,<br>    Defendants. | : <br> : <br> : <br> : | JANUARY 19, 2018 |

**INITIAL REVIEW ORDER AND ORDER ON MOTION FOR APPOINTMENT OF COUNSEL**

**I.    INTRODUCTION**

The plaintiff, Christopher Shand ("Shand"), currently incarcerated at Northern Correctional Institution in Somers, Connecticut, has filed a Complaint (Doc. No. 1) pro se under section 1983 of title 42 of the United States Code.  Shand sought leave to proceed in forma pauperis.  (Doc. No. 2).  On January 9, 2018, the court granted Shand's application.  (Doc. No. 6).

The Complaint names ten defendants: Commissioner Scott Semple, Warden Anne Cournoyer, Deputy Warden William Mulligan, Director of Psychiatric Services Craig Burns, Health Services Administrators Brian Liebel and Rikel Lightner, Psychologists Dr. Mark Frayne and Dr. Leonard Santarsiero, and Psychiatrists Dr. Gerard Gagne and Dr. Zahedi.  Shand contends that his transfer to Northern Correctional Institution ("Northern") has violated his rights under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment.

Under section 1915A of title 28 of the United States Code, the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A.  In reviewing a pro se complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[ ]."  Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).  Although detailed allegations are not required, a complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  Bell Atlantic v. Twombly, 550 U.S. 544, 555–56 (2007).  Conclusory allegations are not sufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)); see also Tracy v. Freshwater, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants).

**II.   ALLEGATIONS**

Shand has been diagnosed with bipolar disorder, major depression, post-traumatic stress disorder, antisocial personality disorder, borderline personality disorder, and sleeping disorder.  He hears voices and sees things. Doc. #1, ¶ 15.  He has been classified as seriously mentally ill.  Id., ¶ 14.  Shand also has suicidal ideations and has

2

engaged in acts of self-harm.  Id., ¶ 16.  He has taken medication to address these conditions since childhood.  Id., ¶ 17.

On January 30, 2015, defendants Semple and Burns transferred Shand to Northern.  Id., ¶¶18-19.  Shand did not receive a hearing before or after his transfer.  Id., ¶ 20.  There are no mental health units at Northern.  Id., ¶ 23.  Defendants Semple, Cournoyer, and Mulligan continued Shand's confinement at Northern for years.  Id., ¶ 24.

At Northern, defendants Semple, Cournoyer, Mulligan, and Burns confined Shand in Administrative Segregation.  Id., ¶ 25.  Some phases of Administrative Segregation involved extended periods of solitary confinement, encompassing social isolation and reduced environmental stimulation.  Id., ¶¶ 26-27.  In Phase I of the Administrative Segregation Program, Shand was confined alone in a small cell for twenty-three hours per day and forced to eat all meals in his cell.  He was released from his cell only for one-hour per day of recreation and for showers three times per week.  When removed from his cell, Shand was placed in full restraints.  He was unable to have contact visits and was restricted to one fifteen-minute telephone call per week.  He was denied any work assignments or congregate programming.  Id., ¶ 28.  Shand was in Phase I for most of the time he was in Administrative Segregation.  Id., ¶ 30.

When Shand progressed to a phase where he was housed with another inmate, he was taunted and threatened by non-mentally-ill inmates and correctional staff because of his mental disorders.  Id., ¶ 31-33.  Shand has experienced stress,

3

depression, and anxiety as a result of this harassment.  His mental disorders have been exacerbated, and he fears for his safety.  Id., ¶ 34.

Defendants Cournoyer and Mulligan have punished Shand for behavior that is the result of his mental illness.  Id., ¶ 35.  He has received disciplinary reports for this behavior, resulting in prolonged placement in Administrative Segregation, placement in Punitive Segregation, denial of telephone and visiting privileges at the same time, placement on in-cell restraints, placement on four-point restraints, and exposure to a chemical agent.  Id., ¶ 36.  The defendants did not attempt a mental health intervention to address Shand's behavior before using discipline or punishment.  Id., ¶ 37.

Defendants Semple, Cournoyer, Mulligan, Burns, Liebel, and Lightner have not adequately trained staff to deal with mentally ill inmates.  Id., ¶ 39.  Defendants Burns, Liebel, Lightner, Frayne, Santarsiero, Gagne, and Zahedi have not developed an adequate mental health treatment plan for Shand and have not involved his family in his mental health treatment or provided psychotherapy.  Id., ¶¶ 40-42.  Defendants Frayne and Gagne discontinued all of Shand's mental health medications.  Id., ¶ 43.  They contend that Shand is manipulative and does not need medication.  Id., ¶ 44.

The conditions of confinement have exacerbated Shand's mental disorders.  Id., ¶ 45.  He suffers from delusions, bewilderment, and racing thoughts, and he experiences loss of sleep and memory as well as anxiety attacks.  Shand hears voices and experiences hallucinations.  He has suicidal ideations and engages in acts of self-harm and self-mutilation.  Shand repeatedly bangs his head against the walls and other hard surfaces.  Id., ¶ 46.  The defendants are aware of Shand's mental health needs,

having been provided his medical and psychological records.  Id., ¶¶ 48-49.  Shand's condition is the subject of many grievances and on-going lawsuits.  Id., ¶ 52.

### III. ANALYSIS

Shand alleges that all defendants were deliberately indifferent to his serious mental health needs; defendants Semple, Cournoyer, Mulligan, Burns, Liebel, and Lightner created a policy, or permitted a policy to continue, under which he was deprived of adequate mental health care; and defendants Semple, Cournoyer, Mulligan, and Burns violated his right to due process by failing to afford him a hearing regarding his transfer to Northern.

####   A. Deliberate Indifference

Shand alleges that all defendants were deliberately indifferent to his serious mental health needs.  "The Eighth Amendment forbids deliberate indifference to serious medical [or mental health] needs of prisoners."  Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks omitted).  To establish a claim for deliberate indifference to a serious medical or mental health need, Shand must allege facts demonstrating two elements.

The first element is objective; "the alleged deprivation of adequate medical [or mental health] care must be sufficiently serious."  Id. (internal quotation marks omitted).  Under this objective element, a court must determine first, "whether the prisoner was actually deprived of adequate medical [or mental health] care," and second, "whether the inadequacy in medical [or mental health] care is sufficiently serious."  Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

Shand alleges that he has been classified as seriously mentally ill and suffers from several mental disorders. In addition, he alleges that the defendants have not developed a plan to treat his disorders and have discontinued medication he has taken for many years, causing his condition to worsen. These allegations are sufficient to satisfy the objective element of the deliberate indifference standard.

The second element is subjective: the defendants "must be subjectively reckless in their denial of medical care." Spavone, 719 F.3d at 138. The inquiry is whether each defendant "has knowledge that an inmate faces a substantial risk of serious harm and . . . disregards that risk by failing to take reasonable measures to abate the harm." Lewis v. Swicki, 629 F. App'x 77, 79 (2d Cir. 2015) (quoting Farmer v. Brennan, 511 U.S. 825, 837-38 (1994)) (internal quotation marks omitted).

The defendants must have acted or failed to act "while actually aware of a substantial risk that serious inmate harm will result." Nielsen v. Rabin, 746 F.3d 58, 63 (2d Cir. 2014) (internal quotation marks omitted). Shand alleges that, despite knowing that he is seriously mentally ill, the defendants have afforded him no treatment and have punished him for behavior that is caused by his mental disorders. The allegations are sufficient at this stage of litigation to state a plausible deliberate indifference claim.

B. Supervisory Liability

Shand also asserts a supervisory liability claim against defendants Semple, Cournoyer, Mulligan, Burns, Liebel, and Lightner, alleging that they created a policy, or permitted a policy to continue, under which he was deprived of adequate mental health care. To state a claim for supervisory liability, Shand must demonstrate that the

6

defendants (1) actually and directly participated in the alleged constitutional violation; (2) failed to remedy a wrong after being informed of it through a report or appeal; (3) created or approved a policy or custom that sanctioned objectionable conduct that rose to the level of a constitutional violation, or permitted such a policy or custom to continue; (4) were grossly negligent in their supervision of the officers who committed the constitutional violation; or (5) were deliberately indifferent to the plaintiff's rights by failing to act in response to information that unconstitutional acts were occurring.  See Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003).

Shand alleges that the defendants were responsible for placing him in Administrative Segregation even though he is mentally ill, not providing adequate mental health treatment, and punishing him for behavior caused by his mental disorders.  Those allegations are sufficient, at the present stage of the litigation, to state a plausible claim for supervisory liability.

    C.  Due Process

Shand alleges that his confinement in Administrative Segregation without a hearing violated his right to due process.  To state a claim for a violation of procedural due process in connection with placement in administrative or punitive segregation, Shand must show that he had a protected liberty interest in remaining free from the confinement he challenges and, if he had such an interest, that the defendants deprived him of the interest without affording him due process of law.  See Walker v. Fischer, 523 F. App'x 43, 44 (2d Cir. 2013) (citing Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001)).

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court reexamined "the circumstances under which state prison regulations afford inmates a liberty interest protected by the Due Process Clause." Id. at 474. The Court explained that for prisoners, a liberty interest warranting due process protection "will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

In Arce v. Walker, 139 F.3d 329, 334–35 (2d Cir. 1998), the Second Circuit determined that the Sandin analysis should be applied to determine whether placement in non-punitive administrative segregation implicated a protected liberty interest. In Wilkinson v. Austin, 545 U.S. 209 (2005), the Supreme Court considered a due process claim regarding classification of inmates to a high security prison for non-disciplinary reasons. The Court applied the Sandin analysis to determine whether inmates had a liberty interest in avoiding indefinite confinement in the restrictive high security prison. Id. at 223 ("After Sandin, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of the regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'") (quoting Sandin, 515 U.S. at 484).

The Second Circuit has held that, to determine "whether [an inmate] endured an atypical and significant hardship," a district court should consider the duration of the

8

inmate's confinement in segregation and "the extent to which the conditions [in] . . . segregation differ from other routine prison conditions." Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (internal quotation marks and citation omitted).

Shand alleges that he has been in Administrative Segregation at Northern since January 2015, and held in isolation for most of that time. He describes many restrictive conditions that were imposed on him for much of the three years. See Brodie v. Kuhlman, No. 96 Civ. 0328(HB), 1997 WL 335657, at *2 n.1 (S.D.N.Y. June 17, 1997) ("It is beyond cavil that three years' confinement in SHU constitutes an 'atypical and significant' hardship deserving of due process protection under Sandin and its progeny."). The court concludes that these allegations are more than sufficient to allege a protected liberty interest. Because Shand also alleges that he was not afforded any process in connection with his placement, his due process claim against defendants Semple, Cournoyer, Mulligan and Burns will proceed.

## IV.   MOTION FOR APPOINTMENT OF COUNSEL

Shand has filed a Motion seeking appointment of pro bono counsel in this action. The Second Circuit repeatedly has cautioned the district courts against the routine appointment of counsel. See, e.g., Ferrelli v. River Manor Health Care Center, 323 F.3d 196, 204 (2d Cir. 2003); Hendricks v. Coughlin, 114 F.3d 390, 393 (2d Cir. 1997). The Second Circuit also has made clear that before an appointment is even considered, the indigent person must demonstrate that he is unable to obtain counsel. Saviano v. Local 32B-32J, 75 F. App'x 58, 59 (2d Cir. 2003) (quoting Cooper v. A. Sargenti Co., 877 F.2d 170, 173 (2d Cir. 1989)). Shand states that he has been unsuccessful in his attempts to obtain representation on his own and lists specific lawyers he would like appointed to

represent him.

Although Shand contacted several law firms, he has not contacted Inmates' Legal Aid Program, the organization under contract with the Department of Correction to provide legal assistance to Connecticut inmates. Absent such contact, the court cannot determine whether Shand can obtain legal assistance on his own. Thus, appointment of counsel is not warranted at this time.

Shand's Motion for Appointment of Counsel is denied without prejudice. Any renewed motion for appointment of counsel shall address why the assistance available from Inmates' Legal Aid Program is insufficient at this stage of litigation.

## ORDERS

(1) **The Clerk shall** verify the current work addresses for each defendant with the Department of Correction Office of Legal Affairs, mail waiver of service of process request packets containing the Complaint and this Order to those defendants within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on him in his individual capacity, and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on the defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from

the date of this Order and to file a return of service within thirty (30) days from the date of this Order.

(3)     **The Clerk shall** send Shand a copy of this Order.

(4)     The defendants shall file their response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They also may include any and all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this Order. Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this Order.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is

a new address.  If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  Plaintiff should also notify the defendants or the attorneys for the defendants of his new address.

(9) Shand shall utilize the Prisoner Efiling Program when filing documents with the court.

(10) Shand's Motion for Appointment of Counsel (**Doc. No. 7**) is **DENIED** without prejudice.

**SO ORDERED.**

Dated this 19th day of January 2018 at New Haven, Connecticut.

      /s/ Janet C. Hall
Janet C. Hall
United States District Judge